**WO**

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Kelly Hill, | No. CV-24-01246-PHX-JAT |
| Plaintiff, | **ORDER** |
| v. | |
| Commissioner of Social Security Administration, | |
| Defendant. | |

Pending before the Court is Plaintiff Kelly Hill's ("Plaintiff") appeal from the Commissioner of the Social Security Administration's ("SSA," "Commissioner," or "Defendant") denial of social security benefits. (Doc. 8-3). The appeal is fully briefed (Doc. 11; Doc. 15; Doc. 16), and the Court now rules.

### I. BACKGROUND

#### A. Factual Overview

Plaintiff was 18 years old on her alleged disability onset date of February 16, 2017. (Doc. 11 at 2). She has "limited education and no past relevant work." (*Id.*) On April 9, 2021, Plaintiff filed her current applications for Title II, Child's Insurance Benefits ("CIB"), and Supplemental Security Income ("SSI") disability benefits. (*Id.*) As relevant here, Plaintiff alleged mental health impairments of schizoaffective disorder, anxiety disorder, panic attacks, depressive disorder, obsessive-compulsive disorder ("OCD"), and attention deficit hyperactivity disorder ("ADHD"). (*Id.* at 2–3). Denial of Plaintiff's claim occurred initially on July 26, 2021, and upon reconsideration on July 11, 2022. (Doc. 8-3

at 19). Plaintiff filed a written request for a hearing before an ALJ, which occurred by telephone on June 12, 2023. (*Id.*) An impartial vocational expert (VE) also appeared and testified in the hearing. (*Id.*) The ALJ issued a decision on December 22, 2023, finding that Plaintiff was not disabled under Section 1614(a)(3)(A) of the Social Security Act. (*Id.* at 13). On April 2, 2024, the SSA Appeals Council denied Plaintiff's request for review of the ALJ's decision and adopted the ALJ's decision as final. (Doc. 11 at 2). Plaintiff filed the present appeal following this unfavorable decision. (*See generally* Doc. 1).

### B.    The SSA's Five-Step Evaluation Process

To qualify for social security disability insurance benefits, a claimant must show that she "is under a disability." 42 U.S.C. § 423(a)(1)(E). To be "under a disability," the claimant must be unable to engage in "substantial gainful activity" due to any medically determinable physical or mental impairment. *Id.* § 423(d)(1). The impairment must be of such severity that the claimant cannot do her previous work or any other substantial gainful work within the national economy. *Id.* § 423(d)(2). The SSA has created a five-step sequential evaluation process for determining whether an individual is disabled. *See* 20 C.F.R. § 404.1520(a)(1). The steps are followed in order, and each step is potentially dispositive. *See id.* § 404.1520(a)(4).

At Step One, the ALJ determines whether the claimant is engaging in "substantial gainful activity." *Id.* § 404.1520(a)(4)(i). "Substantial gainful activity" is work activity that is (1) "substantial," i.e., doing "significant physical or mental activities;" and (2) "gainful," i.e., usually done "for pay or profit." 20 C.F.R. § 416.972(a)–(b). If the claimant is engaging in substantial gainful work activity, the ALJ will find the claimant is not disabled. *Id.* § 404.1520(a)(4)(i).

At Step Two, the ALJ determines whether the claimant has "a severe medically determinable physical or mental impairment" or severe "combination of impairments." *Id.* § 404.1520(a)(4)(ii). To be "severe," the claimant's impairment must "significantly limit" the claimant's "physical or mental ability to do basic work activities." *Id.* § 404.1520(c). If the claimant does not have a severe impairment or combination of impairments, the ALJ

will find the claimant is not disabled. *Id.* § 404.1520(a)(4)(ii).

At Step Three, the ALJ determines whether the claimant's impairment(s) "meets or equals" an impairment listed in Appendix 1 to Subpart P of 20 C.F.R. Part 404. *Id.* § 404.1520(a)(4)(iii). If so, the ALJ will find the claimant is disabled, but if not, the ALJ must assess the claimant's "residual functional capacity" ("RFC") before proceeding to Step Four. *Id.* §§ 404.1520(a)(4)(iii), 404.1520(e). The claimant's RFC is her ability perform physical and mental work activities "despite [her] limitations," based on all relevant evidence in the case record. *Id.* § 404.1545(a)(1). To determine RFC, the ALJ must consider all the claimant's impairments, including those that are not "severe," and any related symptoms that "affect what [the claimant] can do in a work setting." *Id.* §§ 404.1545(a)(1)–(2).

At Step Four, the ALJ determines whether the claimant has the RFC to perform the physical and mental demands of "[her] past relevant work." *Id.* §§ 404.1520(a)(4)(iv), 404.1520(e). "Past relevant work" is work the claimant has "done within the past 15 years, that was substantial gainful activity." *Id.* § 404.1560(b)(1). If the claimant has the RFC to perform her past relevant work, the ALJ will find the claimant is not disabled. *Id.* § 404.1520(a)(4)(iv). If the claimant cannot perform her past relevant work, the ALJ will proceed to Step Five in the sequential evaluation process.

At Step Five, the last in the sequence, the ALJ considers whether the claimant "can make an adjustment to other work," considering her RFC, age, education, and work experience. *Id.* § 404.1520(a)(v). If so, the ALJ will find the claimant not disabled. *Id.* If the claimant cannot make this adjustment, the ALJ will find the opposite. *Id.*

### C.    The ALJ's Application of the Factors

Here, at Step One, the ALJ concluded that the record did not establish that Plaintiff engaged in substantial gainful activity since February 16, 2017, the alleged onset date. (Doc. 8-3 at 22).

At Step Two, the ALJ determined Plaintiff had "severe" impairments including schizoaffective disorder, bipolar type; anxiety disorder, unspecified; panic disorder without

agoraphobia; attention deficit hyperactivity disorder; and obsessive-compulsive disorder. (*Id.*)

At Step Three, the ALJ found that Plaintiff did not have any impairment or combination of impairments that met or medically equaled a listed impairment in Appendix 1 to Subpart P of 20 C.F.R. Part 404. (*Id.*) The ALJ then determined Plaintiff had the RFC to perform a full range of work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b), with the following non-exertional limitations: "[Plaintiff] is limited to simple, repetitive tasks; cannot work in a high production, assembly line type job; can have frequent contact with coworkers and supervisors; and can have no contact with the general public." (*Id.* at 24).

At Step Four, the ALJ established that Plaintiff had no relevant past work. (*Id.* at 29). At Step Five, the ALJ found that Plaintiff could perform a significant number of jobs in the national economy given her age, education, work experience, and RFC. (*Id.* at 30). Representative jobs included Cleaner II, Housekeeping Cleaner, and Kitchen Helper. (*Id.*) Accordingly, the ALJ concluded that Plaintiff was not disabled as defined in the Social Security Act from the alleged onset date through September 8, 2023. (*Id.* at 31).

## II.    LEGAL STANDARD

This Court may not set aside a final denial of disability benefits unless the ALJ decision is "based on legal error or not supported by substantial evidence in the record." *Revels v. Berryhill*, 874 F.3d 648, 654 (9th Cir. 2017) (quoting *Benton ex rel. Benton v. Barnhart*, 331 F.3d 1030, 1035 (9th Cir. 2003)). Substantial evidence refers to "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quoting *Desrosiers v. Sec'y of Health & Human Servs.*, 846 F.2d 573, 576 (9th Cir. 1988)). The Court, in its review, must consider the record in its entirety, "weighing both the evidence that supports and evidence that detracts from the [ALJ's] conclusion." *Id.* (quoting *Garrison v. Colvin*, 759 F.3d 995, 1009 (9th Cir. 2007)).

The ALJ—not this Court—is responsible for resolving ambiguities, resolving conflicts in medical testimony, determining credibility, and drawing logical inferences

from the medical record. *See Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995) (citing *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989); *Gallant v. Heckler*, 753 F.2d 1450, 1453 (9th Cir. 1984)). Therefore, when the evidence of record could result in more than one rational interpretation, "the ALJ's decision should be upheld." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007); *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1198 (9th Cir. 2004) ("When the evidence before the ALJ is subject to more than one rational interpretation, [the Court] must defer to the ALJ's conclusion."). Further, this Court may only review the reasons the ALJ provides in the disability determination; it "may not affirm the ALJ on a ground upon which he did not rely." *Garrison*, 759 F.3d at 1010.

## III. DISCUSSION

Plaintiff's appeal centers on her mental impairments and raises four issues: (1) the ALJ's explanation lacks substantial evidence to support the rejection of Drs. Kemper and Salk's medical opinions, including a failure to describe the consideration of supportability and consistency factors; (2) the ALJ did not provide specific clear, convincing reasons for his rejection of Plaintiff's subjective symptom testimony; (3) the ALJ did not provide germane reasons to reject lay witness testimony; and (4) substantial evidence does not support the ALJ's Step Five finding. (Doc. 14 at 14, 19, 22, 23).

### A. Medical Opinions

#### 1. Legal Standard

Courts in the Ninth Circuit previously distinguished among treating physicians, examining physicians, and non-examining physicians, generally giving the greatest weight to the opinions of treating physicians. *See Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). This distinction was referred to as the "treating physician rule." *See Regula v. Delta Family-Care Survivorship Plan*, 266 F.3d 1130, 1139 (9th Cir. 2001), *cert. granted*, *vacated sub nom. Regula v. Delta Family-Care Disability & Survivorship Plan*, 539 U.S. 901 (2003). However, "in March of 2017, the [SSA] amended their regulations to abrogate the treating physician rule, among other changes." *Alonzo v. Comm'r of Soc. Sec. Admin.*, No. CV-18-08317-PCT-JZB, 2020 WL 1000024, *3 (D. Ariz. Mar. 2, 2020) (citing

*Revisions to Rules Regarding the Evaluation of Medical Evidence*, 82 Fed. Reg. 5844-01, 2017 WL 168819, *5852–57 (Jan. 18, 2017)). Claims filed on or after March 27, 2017, must adhere to the amended regulations. (*Id.*) These regulations state that the ALJ "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from … medical sources." 20 C.F.R. §§ 404.1520c, 416.920c.

In addition to the abrogation of the "treating physician rule," as of March 2017, the amended SSA regulations specify that the ALJ must "consider all medical opinions according to several enumerated factors, including whether the opinion is supported by objective medical evidence and whether the opinion is consistent with the evidence from other sources." *Alonzo*, 2020 WL 1000024, at *3. Supportability and consistency are the "most important factors," and the ALJ must explain how he considered the evidence in light of these two factors for a medical source's opinions. 20 C.F.R § 404.1520c(b)(3).

Moreover, the Ninth Circuit recently determined that in cases governed by the amended SSA regulations above, the "specific and legitimate" standard is also no longer applicable. *See Woods v. Kijakazi*, 32 F.4th 785, 792 (9th Cir. 2022). In *Woods*, the Ninth Circuit concluded the following:

> Our requirement that ALJs provide 'specific and legitimate reasons' for rejecting a treating or examining doctor's opinion, which stems from the special weight given to such opinions is likewise incompatible with the revised regulations. Insisting that ALJs provide a more robust explanation when discrediting evidence from certain sources necessarily favors the evidence from those sources—contrary to the revised regulations.

*Id.* (quotations and internal citations omitted). Subsequently, it is not required that an ALJ provide "specific and legitimate reasons" to reject a treating physician's assessment. *Id.* at 791.

As discussed previously, the ALJ, not the reviewing court, is responsible for resolving ambiguities and conflicts in medical testimony and the medical record. *See Andrews*, 53 F.3d at 1039. Therefore, when the evidence of record could result in more than one rational interpretation, "the ALJ's decision should be upheld." *Orn*, 495 F.3d at

630; *see also Matney ex rel. Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir 1992) ("if the evidence can support either outcome, the Court may not substitute its judgment for that of the ALJ") (citations omitted).

### 2.  Dr. Kemper

Dr. Valerie Kemper, Psy.D., performed a neuropsychological evaluation of Plaintiff on December 18, 2018. (Doc. 8-3 at 28). In her medical opinion, Dr. Kemper stated the following regarding Plaintiff:

> In general, individuals with this level of cognitive ability and pattern of scores are able to function at the following levels:
>
> - Her ability to remember simple locations and work-like procedures is expected to be mildly impaired.
> - Her ability to understand and remember detailed instructions is expected to be mildly impaired.
> - Her ability to carry out detailed (three steps) instructions is expected to be mildly impaired.
> - Her ability to maintain attention and concentration for extended periods (of about 15–30 minutes) is expected to be mildly to moderately impaired.
> - Her cognitive ability to perform activities within a schedule and maintain regular attendance and be punctual within customary tolerances is expected to be mildly impaired. This indicates her cognitive ability to do so, not her motivation to do so.
> - Her ability to sustain an ordinary routine without special supervision would be expected to be mildly impaired. This is her ability to perform tasks without direct, constant supervision.
> - Her cognitive ability to work in coordination with or in proximity to others without being too distractible is expected to be mildly to moderately impaired. This of course will vary with the degree of emotional distress present at any given time.
> - Her ability to make simple work-related decision[s] within her area of knowledge and skill is expected to be low average, but still within generally normal functioning limits.
> - The cognitive ability to interact appropriately with the

general public and co-workers in a work setting is expected to be mildly impaired.

- Her ability to ask simple questions or request assistance from a supervisor is expected to be average and within functional limits.

(Doc. 8-10 at 114).

Regarding Dr. Kemper's assessment, the ALJ wrote the following:

> On December 18, 2018, Valerie Kemper, Psy.D., performed a neuropsychological evaluation of the claimant. It was noted that the claimant got along well with half-siblings when they were sober, but it was harder to have [a] relationship with them when they were using drugs. The claimant currently had three close friends, and a boyfriend is living with the claimant and her mother. On a mini-mental status examination, the claimant scored 29 out of 30, which is a normal score. The full-scale IQ composite score was 77, and diagnoses were schizoaffective disorder, depressive type, and obsessive[-]compulsive disorder. The claimant's ability to maintain attention and concentration and to work in coordination with or in proximity to others mildly to moderately impaired. Dr. Kemper concluded that 'In general, individuals with this level of cognitive ability and pattern of scores are able to function at the following levels:' with the majority of those being normal or mildly impaired (Exhibit 3F). The opinion is supported by a clinical interview with in-person examination and the results of a multiple psychometric assessments. The opinion is not fully supported by a function-by-function analysis. The opinion is partially consistent with a record showing moderate limitations in social and cognitive function, but also in adapting, which is also accommodated in the residual functional capacity. The opinion is partially persuasive.

(Doc. 8-3 at 28–29).

Plaintiff argues that the ALJ improperly rejected Dr. Kemper's medical opinion. (Doc. 11 at 14). Specifically, Plaintiff states that the ALJ failed to include the specific functional limitations Dr. Kemper assessed in "all four 'paragraph B' categories of work-related functioning, including interaction with others and concentrating, persisting, and maintaining pace." (Doc. 11 at 15). Plaintiff asserts that the ALJ's RFC finding "does not

address the deficits Dr. Kemper assessed in concentration, persistence, and pace, or Dr. Kemper's opinion that [Plaintiff] would need significant accommodation to be successful at school or work" and that the ALJ does not explain why these limitations were not included in the RFC finding. (Doc. 11 at 15, 16).

Plaintiff also argues the ALJ was unclear in part of his rationale explaining why portions of Dr. Kemper's opinion were inconsistent with the record. The portion of the ALJ's rationale which Plaintiff claims is unclear is as follows: "[Dr. Kemper's opinion] was not fully supported by a function-by-function analysis. The opinion is partially consistent with a record showing moderate limitations in social and cognitive function, but also in adapting, which is also accommodated in the residual functional capacity. The opinion is partially persuasive." (Doc. 8-3 at 28).

However, the Court disagrees with Plaintiff. Earlier in his analysis, at Step Three, the ALJ concluded that Plaintiff had moderate limitations in social functioning, cognitive functioning, and adapting. (Doc. 8-3 at 23–24). In support of all these findings, the ALJ cited corroborating evidence from multiple treatment notes and assessments from various medical providers in Plaintiff's medical record. (*Id.*) This evidence of record to which the ALJ refers is only partially consistent with Dr. Kemper's opinion that Plaintiff is no more than mildly-to-moderately impaired in these areas. (Doc. 8-3 at 28; *see* Doc. 8-10 at 114). Thus, in the Court's view, the ALJ's "path" to his decision that Dr. Kemper's opinion was "partially persuasive" is clear enough to discern. *Alaska Dept of Env't. Conservation v. E.P.A.*, 540 U.S. 461, 497 (2004) (stating that if an ALJ's decision is made "with less[-]than[-]ideal clarity, a reviewing court will not upset the decision on that account if his path may reasonably be discerned."); *see Brown-Hunter v. Colvin*, 806 F.3d 487, 492 (9th Cir. 2015) (applying this standard to Social Security); *see also Kennedy v. Colvin*, 738 F.3d 1172, 1178 (9th Cir. 2013) ("[An ALJ must] discuss and evaluate the evidence that supports his or her conclusion," but is not required to do so under a specific heading.).

Further, because the ALJ found Plaintiff to be more limited than Dr. Kemper did, Dr. Kemper's opined functional limitations are subsumed within the ALJ's. As such, the

ALJ accounted for Dr. Kemper's opined limitations when determining the RFC. Therefore, any error the ALJ made in his consideration of supportability and consistency factors in relation to Dr. Kemper's opinion is harmless. *See Stout v. Comm'r*, 454 F.3d 1050, 1054 (9th Cir. 2006) (noting ALJ's error is harmless if it was inconsequential to his ultimate disability determination). Accordingly, the Court finds the ALJ's assessment of Dr. Kemper's opinion was free from legal error.

### 3.  Dr. Salk

Dr. Elliot Salk, a state agency reviewing psychologist, prepared an administrative medical finding concerning Plaintiff on July 26, 2021. (Doc. 8-3 at 28; Doc. 11 at 16). Regarding Dr. Salk's opinion, the ALJ wrote:

> On July 26, 2021, Elliott Salk, Ph.D., prepared an administrative medical finding in which he found the claimant could carry out one- or two-step instructions, follow simple work-like procedures, and make simple work-related decisions. The claimant was best suited to work with minimal social demands where interaction with others is superficial and occasional, and the claimant could adapt to an environment that is routine and predictable and where changes could be easily explained (Exhibits 3A; 4A). The finding is supported by reference to the record, especially the consultative examination. It is not well supported by the absence of agency compliant language. The finding is partially consistent with a record reflecting genuine mental health impairments, but with generally unremarkable observations of the claimant other than occasional anxious or depressed mood (Exhibits 1F at p. 8; 2F at p. 14; 3F at p. 16; 6F at pp. 3, 68; 8F at p. 7; 9F at p. 2; 12F at p. 5; 15F at p. 3), and normal activities, such as going to the mall or stores and restaurants (Exhibit 4F at p. 5), watching movies, making her own financial decisions, managing money (Exhibit 4F at p 4), and using a computer (Exhibit 11E). The finding is partially persuasive.

(Doc. 8-3 at 28).

Plaintiff argues that the ALJ improperly rejected Dr. Salk's opinion by providing invalid rationale for doing so. (Doc. 11 at 18). In particular, Plaintiff takes issue with two

reasons the ALJ provided for finding that Dr. Salk's opinion was only "partially persuasive": (1) it was "not well supported by the absence of agency-compliant language," and (2) it was inconsistent with Plaintiff "having normal mood at times and engaging in activities such as shopping, eating in restaurants, or watching movies." (Doc. 11 at 18). As to the latter reason, Plaintiff claims that the ALJ took "some instances of [Plaintiff] having a normal mood out of context, as the record is replete with instances of [Plaintiff] having bouts of anxiety, depression, auditory hallucinations, and suicidal ideation." (*Id.*) Regarding the former reason, Plaintiff asserts, "it is unclear what the ALJ means by 'agency-compliant language.'" (*Id.*)

The Court disagrees with Plaintiff's argument that the ALJ took normal findings "out of context." While the record does indeed contain evidence of Plaintiff's "anxiety, depression, auditory hallucinations, and suicidal ideation," the ALJ reports conflicting evidence, such as "generally unremarkable observations of the claimant [from other medical providers] other than occasional anxious or depressed mood (Exhibits 1F at p.8; 2F at p.14; 3F at p.16; 6F at pp.3, 68; 8F at p.7; 9F at p.2; 12F at p.5; 15F at p.3)," and "[Plaintiff's] normal activities, such as going to the mall or stores and restaurants (Exhibit 4F at p.5), watching movies, making her own financial decisions, managing money (Exhibit 4F at p.4), and using a computer (Exhibit 11E)." (Doc. 8-3 at 28). Thus, the ALJ provided several examples of objective evidence in the record that is inconsistent with the evidence the Plaintiff highlights. In instances where there is contradictory evidence in the medical record, the ALJ is responsible for resolving the conflict. *See Andrews*, 53 F.3d at 1039. In effect, when evidence of record could give rise to more than one rational interpretation, "the ALJ's decision should be upheld." *Orn*, 495 F.3d at 630; *see also Matney*, 981 F.2d at 1019 ("if the evidence can support either outcome, the Court may not substitute its judgment for that of the ALJ"). As such, the Court finds the conflicting evidence the ALJ provided serves as substantial evidence to support the finding that Dr. Salk's opinion is only "partially persuasive." *Revels*, 874 F.3d 648, 654 ("[Substantial evidence is] such relevant evidence as a reasonable mind might accept as adequate to

support a conclusion.")).

Further, the Court acknowledges that it is unclear what the ALJ meant by his statement that Dr. Salk's opinion was "not well supported in the absence of agency compliant language." (Doc. 8-3 at 28). However, as Defendant argues, the ALJ also stated that Dr. Salk supported his findings "by reference to the record, especially the consultative examination." (*Id.*; Doc. 15 at 9). Thus, the ALJ fulfilled his requirement to discuss supportability in his decision. 20 C.F.R § 404.1520c(b)(3) (stating an ALJ must explain how he considered medical source opinion evidence in light of supportability and consistency factors). In addition, as the Court determined above, the ALJ's other reason for finding Dr. Salk's opinion to be only "partially persuasive"—that it was partially inconsistent with the medical record—is supported by substantial evidence. As such, any error on the part of the ALJ here is harmless. *See Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1197 (9th Cir. 2004) ("when there [is] substantial evidence supporting the ALJ's decision[, a]ny error the ALJ may have committed ... [is] harmless and does not negate the validity of the ALJ's ultimate conclusion").

Plaintiff also suggests that the ALJ erred in failing to include Dr. Salk's opined limitations in the RFC. (*See* Doc. 11 at 16–18). In his opinion, Dr. Salk indicated that Plaintiff has moderate limitations in multiple cognitive and social functions. (*See generally* Ex. 3A). He also opined that Plaintiff "is able to perform 1- to 2-step tasks on a sustained basis with limited social contact," "would be best suited to work with minimal social demands where interaction with others is superficial and occasional," and "can adapt to an environment that is routine and predictable and where changes can be easily explained." (*Id.* at 7).

However, Defendant argues that the ALJ was not required to adopt "each and every assessment contained within" Dr. Salk's opinion. (Doc. 15 at 9). The Court agrees with Defendant. Ultimately, it is the ALJ's responsibility to translate and incorporate clinical findings into an RFC. *Baker v. Comm'r of Soc. Sec. Admin.*, No. CV-17-00116-PHX-DGC, 2018 WL 2119167, *3 (D. Ariz. May 8. 2018) (citing *Rounds v. Comm'r Soc. Sec. Admin.*,

807 F.3d 996, 1006 (9th Cir. 2015)). Furthermore, the SSA regulations do not require "a direct correspondence between an RFC finding and a specific medical opinion on the functional capacity in question." *Mertens v. Colvin*, No. CV-15-02296-PHX-DGC, 2016 WL 4168762, *7 (D. Ariz. Aug. 8. 2016) (citing *Gilbert v. Colvin*, No. CV-15-02130-PHX-DLR, 2016 WL 3067767, *3 n.2 (D. Ariz. June 1, 2016)).

Additionally, it is not clear to the Court that the ALJ failed to incorporate any of Dr. Salk's opined limitations into the RFC. For example, in the RFC, the ALJ included the limitation, "[Plaintiff] is limited to simple, repetitive tasks; cannot work in a high production, assembly line type job." (Doc. 8-3 at 24). This is akin to Dr. Salk's opinion that Plaintiff is "is able to perform 1- to 2-step tasks on a sustained basis with limited social contact." (Ex. 3A at 7). Further, in the RFC, the ALJ limited the Plaintiff to only "frequent contact with coworkers and supervisors, and no contact with the general public." (Doc. 8-3 at 24). Elsewhere in his decision, the ALJ explained that "[t]his limitation accommodates [Plaintiff's] allegation that she can easily interact and [go] outside the house with familiar people, but she has difficulty tolerating interaction with strangers." (Doc. 8-3 at 26). Thus, this limitation is supported by substantial evidence and corresponds, at least in part, to Dr. Salk's opinion that Plaintiff "would be best suited to work with minimal social demands where interaction with others is superficial and occasional." (Ex. 3A at 7); *see also Kennedy*, 738 F.3d at 1178 ("[An ALJ must] discuss and evaluate the evidence that supports his or her conclusion," but is not required to do so under a specific heading.).

Based on the above, the Court finds the ALJ appropriately considered Dr. Salk's opinion and committed no legal error in this regard.

## B. Subjective Symptom Testimony

Plaintiff also argues that the ALJ inappropriately rejected Plaintiff's subjective symptom testimony. (Doc. 11 at 19). In assessing the credibility of a claimant's subjective symptom testimony, an ALJ must engage in a two-step analysis. *Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012). First, "the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably

be expected to produce the pain or other symptoms alleged." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007) (internal citation and quotation marks omitted). Next, if the claimant satisfies the first test, then "the ALJ may not discredit a claimant's testimony of pain and deny disability benefits solely because the degree of pain alleged by the claimant is not supported by objective medical evidence." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (internal citation and quotations marks omitted). Rather, "unless an ALJ makes a finding of malingering based on affirmative evidence thereof," the ALJ may only find the claimant not credible by making specific findings supported by the record that provide clear and convincing reasons to explain the credibility determination. *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006).

Here, the ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to produce her alleged symptoms and did not make a finding that she was malingering. (Doc. 8-3 at 25). But the ALJ concluded that Plaintiff's statements regarding the severity of her symptoms were "not entirely consistent" with medical and other evidence in the record and consequently found her less limited than she had alleged. (*Id.*) Because the ALJ did not make a finding that Plaintiff was malingering, the Court must determine whether the ALJ gave specific, clear, and convincing reasons for partly discrediting Plaintiff's symptom testimony.

An adverse credibility determination is sufficiently specific if the ALJ identifies "what testimony is not credible and what evidence undermines the claimant's complaints." *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (citation omitted). Factors an ALJ may consider when determining credibility include, among others, "(1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities." *Id.* at 1163 (citations omitted). An ALJ may "discredit the claimant's allegations" so long as the ALJ "makes specific findings that are supported by the record." *Bunnell v. Sullivan*, 947 F.2d

341, 346 (9th Cir. 1991) (cleaned up). The "specific, clear, and convincing" standard is satisfied where the "ALJ's rationale is clear enough that it has the power to convince." *Smartt v. Kijakazi*, 53 F.4th 489, 499 (9th Cir. 2022).

Plaintiff argues that "the ALJ failed to provide clear and convincing reasons, based on the record, why the limitations [Plaintiff] described do not exist." (Doc. 11 at 21). Specifically, Plaintiff claims that the ALJ: (1) did not "identify specific records contrary to any of [Plaintiff's] specific statements regarding her limitations," nor did he specify "which testimony he found not credible" (*Id.* at 20); (2) took "treatment notes showing minor improvements in [Plaintiff's] condition out of context and failed to appreciate the overall diagnostic picture presented by [Plaintiff's] examining providers" (*Id.* at 21); and (3) improperly considered evidence that Plaintiff was inconsistent in taking her medications. (*See id.*)

As an initial matter, contrary to Plaintiff's argument, the ALJ did not reach the conclusion that Plaintiff's alleged limitations "do not exist." He merely concluded that "[g]reater limitations are not supported by the record" because Plaintiff's "impairments are not as limiting as [Plaintiff] alleged." (*Id.* at 26). Furthermore, the ALJ accommodated these limitations in the RFC. As an example, in his written decision, the ALJ stated,

> Due to the claimant's social anxiety and reported difficulties relating to strangers, the residual functional capacity includes the limitation that she can have frequent contact with coworkers and supervisors … and can have no contact with the general public. This limitation accommodates the claimant's allegation that she can easily interact and [go] outside the house with familiar people, but she has difficulty tolerating interaction with strangers.

(Doc. 8-3 at 26). Statements such as this demonstrate that that the ALJ acknowledged the existence of Plaintiff's limitations, albeit at a level less severe than Plaintiff claimed.

Regarding Plaintiff's argument that the ALJ did not specify which testimony he did not find credible, nor identify what evidence in the record was contrary to this testimony,

the Court disagrees. In multiple instances, the ALJ pointed to specific testimony he did not find credible, linking it to contradictory evidence in the record. For example, the ALJ stated, "[i]n May 2023, the claimant reported no more than 'some' social anxiety and mild depression, but symptoms were manageable with medication…. The finding of mild depression contrasts with the claimant's allegation of extreme depression where she could not get out of bed." (*Id.*) To further illustrate, the ALJ stated, "[c]ontrary to the claimant reporting not showering for weeks due to obsessive compulsive disorder, no treating physician mentioned hygiene issues," and "[c]ontrary to her allegation that she could not leave home without someone familiar accompanying her, the claimant found a new boyfriend, which might be difficult with a mother or someone keeping company." (*Id.* at 26, 27).

The Court acknowledges that there were other instances in the ALJ's decision where he linked specific evidence to testimony he found to be non-credible with less specificity than he demonstrated in the above examples. However, even in these instances, the Court finds it was able to reasonably discern which of Plaintiff's testimony the ALJ considered to be inconsistent with the evidence he highlighted. As such, the Court concludes that in this regard, the ALJ did not err. *See Alaska Dept of Env't. Conservation*, 540 U.S. at 497 (stating that if an ALJ's decision is made "with less[-]than[-]ideal clarity, a reviewing court will not upset the decision on that account if his path may reasonably be discerned.").

Next, Plaintiff claims that the ALJ took "normal" findings and "treatment notes showing minor improvements in [Plaintiff's] condition out of context and failed to appreciate the overall diagnostic picture presented by [Plaintiff's] examining providers." (Doc. 11 at 20, 21). Regarding evidence showing improvement in Plaintiff's condition, Plaintiff did not specify the portions of the record to which she refers, but in reviewing the ALJ's written decision, the Court has identified the following excerpts reflecting improvement in Plaintiff's condition: "[w]ith respect to attention deficit hyperactivity disorder, Vyvanse was noted to provide good control of attention deficit hyperactivity disorder symptoms and binge-eating behaviors" (Doc. 8-3 at 26); "the claimant reported

no more than 'some' social anxiety and mild depression, but symptoms were manageable with medication" (*Id.*); and "the claimant often denied depressed mood or anxiety when taking her medication." (*Id.* at 27). These examples describe effective treatment of Plaintiff's symptoms, which constitutes a specific, clear, and convincing reason to discredit Plaintiff's symptom testimony. *See Wellington v. Berryhill*, 878 F.3d 867, 876 (9th Cir. 2017) ("such evidence of medical treatment successfully relieving symptoms can undermine a claim of disability."); *Parra v. Astrue*, 481 F.3d 742, 751 (9th Cir. 2007) (citing *Johnson v. Shalala*, 60 F.3d 14288, 1434 (9th Cir. 1995) (holding that evidence of effective treatment is sufficient to discount Plaintiff's testimony regarding symptom severity)).

Plaintiff also asserts that the ALJ took "the more normal findings out of context in an attempt to discredit [Plaintiff]." (Doc. 11 at 20). In support of this assertion, Plaintiff states, "the record includes ample findings on examination of [Plaintiff] having impaired judgment and insight, depressed and anxious mood, engaging in skin picking behaviors, experiencing auditory hallucinations, and having panic attacks." (*Id.*) In addition, Plaintiff points to her hospitalization for suicidal ideation, which occurred one month prior to the administrative hearing. (*Id.*) However, the Court notes that Plaintiff's hospitalization occurred during a period in which Plaintiff was not taking her medications due to nausea following a gastric sleeve procedure. (Doc. 8-3 at 26; Doc. 11 at 21). Further, while the record does contain the findings Plaintiff describes, there is also evidence from the record contradicting these findings, which the ALJ identified in his decision. For example, the ALJ stated, "[c]ognitively, treating physicians generally observed … logical thought process[es]"; "[i]n May 2023, the claimant reported no more than "some" social anxiety and mild depression, but symptoms were manageable with medication … and she denied hallucinations"; and "[a]t a consultative examination, the claimant showed no signs of anxiety or depression, obsessive compulsive disorder, or schizoaffective disorder." (Doc. 8-3 at 26, 27). Considering such evidence, Court finds reasonable the ALJ's conclusion that Plaintiff's limitations were not as severe as alleged.

As previously discussed, the ALJ—not this court—is responsible for resolving conflicts in medical testimony and drawing logical inferences from the medical record. *See Andrews*, 53 F.3d at 1039. Therefore, the Court declines to second guess the ALJ's reasonable interpretation of the evidence, even if such interpretation could result in inferences more favorable to Plaintiff. *See Rollins*, 261 F.3d at 857 (holding that, even when the medical record was equivocal, the court would not second-guess the ALJ's interpretation so long as it was reasonable). Thus, the conflicting evidence the ALJ cites suffices as a clear and convincing reason to discount Plaintiff's testimony. *See Carmickle v. Comm'r*, 533 F.3d 1155, 1161 (9th Cir. 2008) ("Contradiction with the medical record is a sufficient basis for rejecting the claimant's subjective testimony.") (citation omitted).

Finally, Plaintiff seems to suggest that, in rejecting Plaintiff's symptom testimony, the ALJ improperly considered evidence that Plaintiff was not consistently taking her medications, because Plaintiff had valid reasons for not taking them. (*See* Doc. 11 at 21; Doc. 16 at 8) ("[Plaintiff] had just had bariatric surgery and the medications were worsening her nausea…. [and Plaintiff's] mother had experienced problems getting refills from the pharmacy."). The ALJ discussed Plaintiff's consistency with medication administration in his decision as follows: "When the claimant was hospitalized in May 2023, the claimant acknowledged she had not been taking her medication consistently (Exhibit 16F at p.17). On other occasions, the claimant admitted she did not take her medication consistently (Exhibits 1F at p.7; 16F at p.11)[.]" (Doc. 8-3 at 26). The Court notes that the ALJ did not discuss Plaintiff's reasons for not taking her medication in his decision.

However, it does not appear to the Court that the ALJ used Plaintiff's inconsistency in taking medication as a primary reason to discount Plaintiff's testimony in his decision. (*See id.* at 27–28) ("The nature of the impairments, the effectiveness of medication, the observations of treating physicians and examining physicians, and the activities of the claimant are not consistent with the claimant's allegations or more restrictive residual functional capacity."). Further, as discussed above, the ALJ provided other clear and

convincing reasons, supported by substantial evidence, to reject Plaintiff's testimony. As such, the Court finds that any error the ALJ made in failing to acknowledge the reasons behind Plaintiff's inconsistency in taking medication is harmless. *Carmickle*, 522 F.3d at 1162–63 (indicating that an ALJ's error is harmless provided his "remaining reasoning and ultimate credibility determination were adequately supported by substantial evidence in the record.").

### C. Lay Witness Testimony

Plaintiff also claims that the ALJ inappropriately rejected lay witness testimony. Plaintiff's mother, family friend, and father all completed function reports describing Plaintiff's conditions, daily activities, and abilities. (*See generally* Exs. 3E and 4E). As to the three lay witnesses' testimony, the ALJ's decision provides: "The third-party function reports (Exhibits 3E; 4E) are considered." (Doc. 8-3 at 29). However, the ALJ did not state whether he accepted or rejected this testimony, or why. (*Id.*)

Prior to the SSA's revision of its regulations, which were effective as of March 27, 2017, in the Ninth Circuit, lay testimony was "competent evidence that an ALJ must take into account, unless he or she expressly determines to disregard such testimony and gives reasons germane to each witness for doing so." *Deidrich v. Berryhill*, 874 F.3d 634, 640 (9th Cir. 2017) (quoting *Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001)). Defendant argues that in the Ninth Circuit, this standard no longer applies under the revised regulations for cases such as this one, which was filed after March 27, 2017, and in effect, the ALJ was not required to provide germane reasons to reject the lay witnesses' (non-medical source) testimony. (Doc. 15 at 16) (citing *Wendy J.C. v. Saul*, No. 3:19-CV-01434-AC, 2020 WL 6161402, *12 (D. Or. Oct. 21, 2020)).

Conversely, Plaintiff contends that the issue of whether the "germane reasons" requirement still applies has not yet been resolved by the Ninth Circuit. (Doc. 16 at 9). In this respect, the Court agrees with Plaintiff. The Ninth Circuit has "not yet addressed whether under the new regulations an ALJ is still required to provide germane reasons for discounting lay witnesses." *Stephens v. Kijakazi*, No. 22035998, 2023 WL 6397296, *2

(9th Cir. 2023). Courts within the Ninth Circuit are split on this issue. *Brown v. Comm'r of Soc. Sec. Admin*, CV 23-8053-PCT-JJT (ESW), 2024 WL 1679375, *9 (D. Ariz. Mar. 15, 2024), report and recommendation adopted, 2024 WL 1675640 (D. Ariz. Apr. 18, 2024) (citing *Stricker v. Acting Comm'r of Soc. Sec. Admin.*, No. CV-21-0317-TUC-SHR (LCK), 2022 WL 3588215, *6 (D. Ariz. July 29, 2022), report and recommendation adopted, 2022 WL 3585833 (D. Ariz. Aug. 22, 2022)) (holding that under the revised regulations, ALJs must provide germane reasons to discount lay witnesses); *Wendy J.C.*, 2020 WL 6161402, at *12 (holding the opposite)).

However, Defendant also argues, and Plaintiff does not dispute, that all three of the lay witnesses' testimonies concerning Plaintiff's symptoms and limitations are largely identical to Plaintiff's subjective symptom testimony. (Doc. 15 at 17). The Court agrees with Defendant. As such, by providing clear and convincing reasons for rejecting Plaintiff's subjective symptom testimony, the ALJ also effectively gave germane reasons for rejecting lay witness testimony that duplicates Plaintiff's. *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 694 (9th Cir. 2009) ("the ALJ provided clear and convincing reasons to reject [the claimant's] own subjective 'complaints; [thus,] it follows that the ALJ also gave germane reasons for rejecting [lay witness] testimony … similar to such complaints"). Hence, regardless of whether the "germane reasons" standard still applies in cases subject to the 2017 revised regulations, any error the ALJ made in discounting the lay witness testimony has been rendered harmless, because the ALJ provided legally sufficient reasons for his rejection of Plaintiff's subjective symptom testimony. *Brown*, 2024 WL 1679375, at *10. (holding the same when lay witness testimony was similar to the claimant's symptom testimony).

### D. Step Five Finding

Plaintiff further contends that the ALJ erred at Step Five by providing incomplete hypothetical questions to the VE and then relying on the VE's responses to the hypotheticals in determining whether Plaintiff can make adjustments to work. (Doc. 11 at 23). Plaintiff faults the ALJ for "omitting [Plaintiff's] credible allegations, the limitations

described by the lay witnesses, and the limitations assessed by Dr. Kemper and Dr. Salk" from the hypothetical questions he posed. (*Id.* at 22–23). In effect, Plaintiff argues, because the ALJ's hypothetical questions did not include all of Plaintiff's limitations, "the VE's testimony … has no evidentiary value." (*Id.* at 24).

In the Ninth Circuit, when an ALJ's hypothetical is not reflective of all of a claimant's limitations, "then the [VE's] testimony has no evidentiary value to support a finding that the claimant can perform jobs in the national economy." *Bray v. Comm'r*, 554 F.3d 1219, 1228 (9th Cir. 2009) (citation and internal quotation marks omitted). Nonetheless, an ALJ "is free to accept or reject restrictions in a hypothetical question that are not supported by substantial evidence." *Greger v. Barnhart*, 464 F.3d 968, 973 (9th Cir. 2006) (citation omitted).

Here, Plaintiff's assertion is essentially a reiteration of her previous arguments that the ALJ should have fully credited Plaintiff's symptom testimony and the lay witnesses' testimony, and fully credited and completely adopted Drs. Kemper and Salk's assessments and opined limitations. Because the Court has concluded that the ALJ properly weighed Plaintiff's testimony, the lay witnesses' testimony, and Drs. Kemper and Salk's opinions regarding Plaintiff's limitations when determining the RFC, Plaintiff has not shown that the ALJ's resulting hypotheticals were incomplete. *See Kitchen v. Kijakazi*, 82 F.4th 732, 742 (9th Cir. 2023) (rejecting a claimant's similar argument); *Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1175–76 (9th Cir. 2008) (same).

### E.  Additional Proceedings

Finally, Plaintiff requests remand for calculation of benefits pursuant to the credit-as-true rule, or in the alternative, further administrative proceedings. (Doc. 11 at 24–25). However, because the Court is upholding the ALJ's decision, the Court denies Plaintiff's request for remand without considering the credit-as-true doctrine. *See Leon v. Berryhill*, 880 F.3d 1041, 1047 (9th Cir. 2017) (stating a direct award of benefits is only appropriate "when the record clearly contradicted an ALJ's conclusory findings and no substantial evidence within the record supported the reasons provided by the ALJ for a denial of

benefits").

## IV.    CONCLUSION

Considering the foregoing,

**IT IS ORDERED** that the ALJ's opinion is AFFIRMED, and the Clerk of the Court shall enter judgment accordingly.

Dated this 14th day of January, 2025.

James A. Teilborg
Senior United States District Judge